Gene Williams HODGE *v.* STATE of Arkansas

CR 90-62 797 S.W.2d 432

Supreme Court of Arkansas
Opinion delivered October 22, 1990

*Kirkpatrick and Horan*, by: *Matthew Horan*, for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Gene William Hodge, was convicted of possession with intent to deliver methamphetamine, and sentenced to life imprisonment and a fine of $50,000.

Hodge raises six points of error on appeal. Since we find merit in Hodge's first argument, that the verdict was not supported by legally sufficient evidence, we need not address the remaining points of error.

On December 27, 1988, Arkansas undercover police arrested Rick Spears for selling narcotics. Spears agreed to cooperate with the police in establishing a case against Hodge. The same evening, Spears, wearing a police wire, went to Hodge's residence to arrange a buy of one ounce of methamphetamine, or "crank." Hodge related that he did not have any on hand and attempted to reach his suppliers, "Bo and Belinda," by phone. The call was unsuccessful but Hodge told Spears he would contact Bo and Belinda and obtain an ounce the following day.

On December 28, 1988, Spears called Hodge and they agreed to meet at 6:30 p.m. to consummate the sale. Police set up surveillance of Hodge that afternoon. They followed him from his girlfriend's residence to nearby Sallisaw, Oklahoma, where he stopped in the parking lot of a truck stop. Shortly thereafter, Bo Bates and Belinda Flowers, recognized by one of the surveillance officers as a couple previously arrested for running a drug lab, arrived in a pickup truck. Hodge left his car and joined Bates and Flowers in the truck. After approximately fifteen minutes, Hodge and Flowers emerged from the truck, got in Hodge's car and drove to the state line, heading for Fort Smith, Arkansas.

On the Arkansas side of the bridge, as Hodge and Flowers entered Fort Smith, waiting police signalled for Hodge to stop his car. Hodge accelerated and prompted a high speed, sixteen block chase through town. The state presented evidence that Hodge's

car may subsequently have begun leaking transmission fluid, causing it to stop. Hodge and Flowers were then arrested. A search of the vehicle and its occupants revealed only a small amount of marijuana in Flowers' purse and thirty to forty dollars in Hodge's possession.

After Hodge and Flowers were incarcerated, a police officer retraced the route of the chase and, halfway back along the route, scattered up to twenty-five feet beyond an intersection where Hodge had turned, he found an empty "Pringles" potato chip can and two "Ziploc" bags containing a total of what was later identified as approximately two ounces of methamphetamine.

In criminal cases on appeal, where the appellant challenges the sufficiency of the evidence, we will affirm the trial court's decision if there is substantial evidence to support the findings. *See Abdullah* v. *State*, 301 Ark. 235, 783 S.W.2d 58 (1990). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Edwards* v. *State*, 300 Ark. 4, 775 S.W.2d 900 (1989). We note, at this juncture, that the state makes no attempt to argue the facts of the case before us in its brief but merely relies on its conclusory contention that the evidence was sufficient. We conclude, however, from the presented facts, that the evidence was not sufficient and that the jury could not have reached its guilty verdict without resorting to suspicion and conjecture.

Hodge was charged with possession with intent to deliver methamphetamine. We have often said that proof of actual or physical possession is not required. *See Wade* v. *State*, 267 Ark. 1101, 594 S.W.2d 43 (1980). A person can be in *constructive* possession of contraband when he either maintains control or a right to control. *See Sanchez* v. *State*, 288 Ark. 513, 707 S.W.2d 310 (1986).

We have established the requisite proof for constructive possession in a long line of cases concerning joint occupancy. Where contraband is discovered in jointly occupied premises, and there is no direct evidence that it belongs to a particular occupant, some additional factor must be present linking the accused to the contraband. The state must prove that the accused exercised care, control and management over the contraband. *See Parette* v.

*State*, 301 Ark. 607, 786 S.W.2d 817 (1990); *Plotts* v. *State*, 297 Ark. 66, 759 S.W.2d 793 (1988); *Osborne* v. *State*, 278 Ark. 45, 643 S.W.2d 251 (1982). The same analysis applies here. Certainly, where narcotics are found in an area entirely outside the control of the defendant and exposed to the public at large, the state must provide more definite factors linking the defendant to the contraband than were provided here.

The evidence presented by the state, to link Hodge to possession of the methamphetamine found on the roadside, included the taped conversations between Hodge and Spears; Hodge's meeting with known drug dealers, Bo Bates and Belinda Flowers; and the fact that Hodge fled from the police.

The evidence presented by Hodge, however, cast overwhelming doubt on his connection to the methamphetamine. Police saw no exchange of contraband or money between Hodge, Bates, and Flowers, and no narcotics or large sums of money were found in Hodge's possession. The officer chasing Hodge saw nothing dropped or thrown from the car, although he testified he was following only two car lengths behind. In addition, the amount of contraband discovered far exceeded the intended purchase of one ounce agreed on by Hodge and Spears.

Hodge further demonstrated that the chase route was heavily travelled, with over 800 cars a day passing by the specific intersection where the drugs were discovered.

Several sets of fingerprints were lifted from the "Ziploc" bags and the "Pringles" can but none matched those of Hodge or Flowers. (The state, in submitting the Pringles can into evidence, proposed the tenuous theory that if Hodge and Flowers had been eating potato chips, the greasy residue left on their fingers would preclude them from leaving prints.) When the state introduced the bags of methamphetamine in court, the substance emitted an extremely strong odor, typical of this type drug; however, no such odor was detected either in the car or about Hodge and Flowers. Lastly, following his arrest, Hodge was surreptitiously recorded and quizzed about the crime, and denied he was carrying drugs on the evening in question.

Simply put, the state's evidence fails to link Hodge to constructive possession of the methaphetamine. Constructive

possession may be established by circumstantial evidence, but when such evidence alone is relied on for conviction, it must indicate guilt and exclude every other reasonable hypothesis. *See Trotter* v. *State*, 290 Ark. 269, 719 S.W.2d 268 (1986); *Murry* v. *State*, 276 Ark. 372, 635 S.W.2d 237 (1982). The state's evidence of constructive possession in this case is, in fact, entirely circumstantial. Although it impels the strong suspicion that Hodge was in possession of the contraband, the question is whether such a suspicion is sufficient enough to support a conviction.

Our analysis is similar to that employed by the Illinois Supreme Court in *People* v. *Jackson*, 23 Ill. 2d 360, 178 N.E.2d 320 (1961). In *Jackson*, state narcotics officers obtained a search warrant for Jackson's third floor apartment. When the officer presented the warrant at the door of Jackson's apartment, she fled down the hall and locked herself in the bathroom. When she finally emerged and was arrested, after a prolonged struggle, a search was conducted of the bathroom and the apartment. No contraband was discovered. However, several bags of heroin were later found lying directly beneath the bathroom window, on the ground floor, in an airwell which was covered with debris. Seven other apartments also had windows opening on the airwell. No fingerprints on the bags were introduced by the state.

Basing its decision on insufficiency of the evidence, the court reversed Jackson's conviction and held that while there was a strong possibility that Jackson was in possession of the heroin, mere probability would not support a conviction. The court held that the state satisfies its burden when it proves possession (which may be constructive), together with knowledge of such possession. Although Jackson's suspicious conduct was proof of guilty knowledge, it does not extend to proof of criminal possession. *Jackson*, supra.

We hold that the circumstantial evidence was insufficient to convict Hodge of possession with intent to deliver methamphetamine. "No one should be deprived of his liberty or property on mere suspicion or conjecture. Where inferences are relied upon, they should point to guilt so clearly that any other conclusion would be insufficient. This is so regardless of how suspicious the circumstances are." *Ravellette* v. *State*, 264 Ark. 344, 347, 571 S.W.2d 433, 435 (1978).

Reversed and dismissed.

GLAZE, J., concurs in part and dissents in part.