2013 Ark. App. 135

**Terrance DUGGAR, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 12–521.**

Court of Appeals of Arkansas.

Feb. 27, 2013.

Sherwood & Merritt, PLLC, by: Sara F. Merritt, for appellant.

Dustin McDaniel, Att'y Gen., by: Brad Newman, Ass't Att'y Gen., for appellee.

BRANDON J. HARRISON, Judge.

The State charged Terrance Duggar with violating multiple drug-related statutes. A jury found Duggar guilty of a lesser-included offense: possessing at least four ounces but less than ten pounds of

marijuana, which is a Class D felony. Ark. Code Ann. § 5–64–419(b)(5)(iii) (Supp. 2011). He was acquitted on all other charges. The circuit court's final sentencing order sentenced Duggar to seventy-two months in the Arkansas Department of Correction and fined him $10,000 dollars. Duggar appeals that order on two grounds: the circuit court mistakenly admitted marijuana into evidence because there were missing links in the chain of custody, and there was insufficient evidence to support his conviction. We affirm on both points.

## I. There was Sufficient Evidence that Duggar Constructively Possessed Marijuana

We address Duggar's insufficient-evidence argument first. *Boldin v. State*, 373 Ark. 295, 297, 283 S.W.3d 565, 567 (2008). We will concentrate on State's Exhibit No. 4 because the other amounts of marijuana that the court admitted into evidence— Exhibit Nos. 1 and 7—do not cumulatively add up to the statutory minimum weight of four ounces. Ark.Code Ann. § 5–64–419(b)(5)(iii).

In a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State and consider only the evidence that supports the conviction. *Cluck v. State*, 365 Ark. 166, 170, 226 S.W.3d 780, 783 (2006). We must affirm the jury's verdict if it is supported by substantial evidence, which is proof that compels or forces a reasonable mind to move past conjecture or speculation. *Id.* To preserve a challenge to the sufficiency of the evidence, Duggar must have made a specific motion for a directed verdict at the close of the State's case that advised the circuit court of the exact element of the crime the State failed to prove. *Conley v. State,* 2011 Ark.App. 597, 385 S.W.3d 875; Ark. R.Crim. P. 33.1 (2012).

He did so. Duggar renewed his motion again at the close of all the evidence. On appeal, Duggar again argues that the State did not present sufficient evidence that he constructively possessed contraband.

In August 2011, law enforcement converged upon a house located at 10900 Birchwood Drive in Little Rock and executed a search warrant. Duggar and another person named Larry Hatchett were in the house when police entered. Duggar was arrested and charged with violating Ark.Code Ann. §§ 5–64–436, 5–64–402, and 5–64–443 because a number of bags of marijuana, baggies, and a scale were found in the house while Duggar was there. Duggar took his case to trial before a Pulaski County jury.

During the March 2012 jury trial, Little Rock Police Detective John Wesley Lott testified that when he entered the house he saw several large bags of marijuana in the corner of the dining room and kitchen area; Duggar was on the floor facing the bags. (SWAT Team members entered the house first to take control and ensure everyone's safety.) Detective Lott did not, however, see "with [his] own eyes where [Duggar] was when the SWAT Team hit that door." Detective Charles Weaver, also of the Little Rock Police Department, testified during the trial that the house had a "big open floor plan" and that Duggar was on the floor next to the kitchen table when he entered the house. According to Detective Weaver, a number of bags of marijuana were located three or four feet from the kitchen table. Detective Lott identified State's Exhibit No. 4 as being the six bags of marijuana that were located three to five feet to the left of the table, "in plain view of the kitchen."

The police also found letters addressed to Duggar in the northwest bedroom of the house—another letter with Duggar's name

and the Birchwood address on the return label was found elsewhere inside the house. The record is silent on who actually owned or leased the property, but Detective Lott said during the trial that "Mr. Duggar gave [me] the address of the [Birchwood Drive] house as his address."

On appeal, Duggar contends that the State did not sufficiently prove that he constructively possessed the marijuana. To prove constructive possession, the State must establish that Duggar exercised care, control, and management over the marijuana. *McKenzie v. State*, 362 Ark. 257, 262–63, 208 S.W.3d 173, 175 (2005). Constructive possession may be established by circumstantial evidence. Duggar argues that the State failed to connect him to the marijuana because the letters addressed to him do not establish the necessary legal link. And he asserts that the other evidence the police gathered was insufficient and unreliable because there were no fingerprints or photographs taken, the police did not investigate who leased the residence, and the utility bills were in someone else's name.[1] Finally, Duggar says that defense witness James Tim's testimony that the marijuana was his, and not Duggar's, is "far more reliable than any evidence presented by the State and calls for a reversal of [Duggar's] conviction."

These arguments do not persuade us to reverse. The jury was responsible for weighing and crediting the evidence in this case. *Tatum v. State*, 2011 Ark. App. 83, at 6, 380 S.W.3d 519, 523. Substantial evidence supports the jury's verdict because it could have reasonably inferred that Duggar constructively possessed the marijuana.

These facts are strikingly similar to a case we decided not long ago, where we upheld a drug-related conviction. *Allen v. State*, 2010 Ark. App. 266, 2010 WL 1233830 (the jury could reasonably infer constructive possession of a controlled substance when the substance was found in the kitchen, the defendant gave the police the address of the scene as his resident address, and defendant received mail at the address). The bottom line is that the jury was not required to speculate to find that Duggar constructively possessed contraband. That another person (Larry Hatchett) was present in the house when the police raided it does not require us to reverse. Something more than Duggar's presence in the house is required to establish constructive possession—the "something more" may be the proximity to the marijuana, law enforcement's ability to see the contraband in plain view, and whether Duggar owned the house where the marijuana was found. *Id.* That the marijuana was found in a common area of the house helps the State establish constructive possession of contraband. *McDaniel v. State*, 2011 Ark. App. 677, at 4, 2011 WL 5430112. Add this to the detectives' testimony that the marijuana was near Duggar, that he told a detective that he lived in the Birchwood house, and that Duggar had some mail inside the house, and it becomes clear that the jury had sufficient evidence to find that Duggar constructively possessed contraband. Regarding Tim's testimony, it does not require us to reverse Duggar's conviction because the jury was free to believe or to reject Tim's statement that he, not Duggar, owned the marijuana, *Loggins v. State*, 2010 Ark. 414, at 5, 372 S.W.3d 785, 790 (holding that

---

1. The State argues in its reply brief that the police "found no documents in the house with the names of any other person [besides Duggar's] on them." Detective Lott testified that the Birchwood Drive utility bills were registered to Byron Smith. The State's oversight is not a crucial one given the entire record.

circumstantial evidence of drug possession and witness credibility are issues for the jury and not the court). We hold that there was sufficient evidence for reasonable minds to conclude that Duggar possessed the marijuana under section 4–64–419(b)(5)(iii).

## II. *There was No Meaningful Break in the Chain of Custody*

■ The crux of Duggar's attack on the chain of custody concerns State's Exhibit No. 4. He argues that the circuit court erred when it admitted Exhibit No. 4 because the State did not sufficiently establish chain of custody over the marijuana at trial.

■ We will not reverse the circuit court's evidentiary ruling on Exhibit No. 4's admissibility absent an abuse of discretion and a showing that it prejudiced Duggar. *Guydon v. State*, 344 Ark. 251, 255, 39 S.W.3d 767, 770 (2001). Duggar would have been prejudiced by an erroneous admission of Exhibit No. 4 because, as we have said, without that exhibit the State could not have satisfied the threshold amount of contraband needed to convict under section 4–64–419. The problem for Duggar's appeal is that the circuit court did not abuse its discretion in admitting Exhibit No. 4 in the first place. A court abuses its discretion when it acts thoughtlessly or without due consideration. *Id.* That did not happen here.

We return to Detectives Lott and Weaver, who testified that they saw (in plain view) several large bags of marijuana sitting out in the kitchen and dining area when they entered the house. Detective Lott—who was the property officer at the scene when the search warrant was executed at the Birchwood house—said that the bags weighed approximately five pounds. He tagged and logged all the evidence on an inventory form; he then placed the evidence in lockup according to police procedures. Detective Lott identified the inventory tag on State's Exhibit No. 4 at trial, and he described the exhibit as being the six bags of marijuana he recovered from the house. He specifically said that he had placed the six bags of marijuana into the large, clear bag labeled State's Exhibit No. 4. The jury saw the exhibit.

Julie Hathcock, a forensic chemist at the Arkansas State Crime Lab, testified for the State. (Duggar did not challenge her credentials.) Hathcock said that the crime lab where she works received all six items from Duggar's case under seal and in a box. Hathcock testified that Exhibit No. 4 was sealed when she first contacted it. She also said that all the tag numbers (which the police department assigned) and the submission-sheet numbers (which the crime lab assigned) matched. Hathcock unequivocally confirmed at trial that Exhibit No. 4 was substantially in the same condition as when she had first received it at the crime lab.

On cross-examination, Hathcock said that Exhibit No. 4 contained six bags, and one of the bags contained three zippered zip-locks that she had labeled A–C. Exhibit No. 4 also contained two additional heat-sealed bags—and each heat-sealed bag had zippered zip-locks. Hathcock labeled the two heat-sealed bags D and E. Exhibit No. 4 also contained one zip-lock bag that itself contained five tied plastic bags. Each of those bags she labeled F through J. While in the lab, Hathcock took the marijuana out of the packages, aggregated it, and weighed it. The marijuana that was Exhibit No. 4 weighed 2,366.9 grams. Tests performed on each of the ten samples confirmed that Exhibit No. 4's content was marijuana. The bottom line is that Hathcock testified that Exhibit No. 4 contained ten different bags of marijuana and the

exhibit's total cumulative weight was 5.218 pounds of marijuana.

Our supreme court has said establishing the chain of custody for interchangeable items (like drugs) must be more conclusive than for other items. *Crisco v. State*, 328 Ark. 388, 392, 943 S.W.2d 582, 585 (1997). The mere possibility that someone can access the contraband is not enough to render test results inadmissible; some evidence of tampering is also required. *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006); *Washington v. State*, 2010 Ark. App. 596, 377 S.W.3d 518. Minor flaws in chain-of-custody proof are matters that defense counsel may argue to the jury and which the jury may weigh in its deliberations. *Green*, 365 Ark. at 478, 231 S.W.3d at 638. They do not mean the evidence is inadmissible as a matter of law. *Id.*

Minor uncertainties, legally speaking, is what Duggar presents on appeal. He says that Detective Lott said Exhibit No. 4 was composed of six bags, a significantly different number from Hathcock's tale of ten bags. Duggar wants the marijuana excluded because "[i]t is unclear whether additional marijuana had been added to State's Exhibit No. 4 between the time of seizure and testing by the State Crime Lab." He says this difference in bag numbers and whether more marijuana was added while Exhibit No. 4 was in transit is important because the weight of the marijuana was a factor to be considered by the jury. Duggar relies on *Crisco v. State* to support his exclusionary argument. 328 Ark. 388, 389, 943 S.W.2d 582, 583 (1997). There, our supreme court held that the State was required to do more than "merely trace the route of the envelope containing the substance" when the "marked difference" between the officer's description of the contraband (white powder) and the chemist's description of it (tan rock-like

substance) created a "significant possibility" that the evidence tested, and the evidence gathered, were different substances.

This case is not like *Crisco*. Here, the jury arguably heard conflicting testimony on the number of bags that Exhibit No. 4 contained (six bags versus ten bags). But the conflict is not pivotal given all the testimony. Hathcock explained on cross-examination why the six bags were actually ten. The jury was permitted to conclude that Hathcock had provided a rational explanation of the difference between her numbering scheme and Detective Lott's. The differences between Detective Lott's descriptions and Hathcock's descriptions on the quantity and weight of the marijuana were minor discrepancies that the jury could consider and weigh as the parties made their cases. Our case law so holds. *See Guydon v. State*, 344 Ark. 251, 258, 39 S.W.3d 767, 771 (2001) (minor discrepancy in weights did not raise a reasonable probability that a break in chain of custody had occurred); *see also Jones v. State*, 82 Ark.App. 229, 232, 105 S.W.3d 835, 837 (2003) (no abuse of discretion in admitting drugs when the weight difference between the police officer's calculations (59 pounds) and the chemist's calculations (42 pounds) was explained by the officer).

Duggar also complains that Detective Lott did not testify that he took all the marijuana exhibits to the crime lab. The detective said that he sent Exhibit Nos. 2 and 3 to the crime lab. Exhibit Nos. 2 and 3 were digital scales. He did not say that he took Exhibit No. 4 to the lab. Detective Lott said, however, he put all the evidence that was collected at the scene in lockup at the police station. Although Hathcock testified that the evidence was sealed when she first saw it, Detective Lott did not say that he put his initials or that he sealed the evidence when he put it

in lockup. Nor was there any testimony on who signed for, and received, Exhibit No. 4 when it first arrived at the crime lab. In fact, we have not found any testimony in the record that precisely explains how Exhibit 4 got from the Birchwood house to the crime lab.

The questions of who took the evidence from the police station to the crime lab and who first received it at the crime lab do not, in this case, break the chain of custody because what Duggar needed to establish was that Exhibit No. 4 had been tampered with or adulterated in some way. We have no such evidence before us. *E.g., Owens v. State,* 2011 Ark. App. 763, 387 S.W.3d 250 (circuit court did not err in admitting items although no one could say how the evidence got from the scene of the stop to the evidence locker and there was no evidence of tampering); *Tatum v. State,* 2011 Ark. App. 83, at 8, 380 S.W.3d 519, 524 (testimony from police officer who retrieved the drugs from the crime lab was not essential to chain of custody). Duggar has not mentioned any facts that support his allegation that marijuana may have been added to State's Exhibit No. 4 between the time the police department seized it and the Arkansas State Crime Lab tested it. But the State presented documentary and testimonial evidence on the contents and whereabouts of Exhibit No. 4 and that reasonable precautions were taken against the risk of adulteration or contamination. *Butler v. State,* 303 Ark. 380, 387, 797 S.W.2d 435, 439 (1990).

■ The State need not eliminate every possibility of tampering. Instead, the circuit court need only be satisfied that, in all reasonable probability, the evidence was not tampered with. *Hawkins v. State,* 81 Ark.App. 479, 483, 105 S.W.3d 397, 399–400 (2003). The court was so satisfied. We are too, given the lack of any proof or argument from Duggar that tampering

had occurred. The bags of marijuana appeared to be in the same condition and contain the same amount and the same substance (green and leafy) from the time they were taken from the house until they were introduced at trial as Exhibit No. 4. We therefore hold that the court did not abuse its discretion in admitting Exhibit No. 4 as evidence against Duggar's legal interests. Because we hold that State's Exhibit No. 4 was properly admitted, we need not address Duggar's arguments pertaining to State's Exhibit Nos. 1 and 7.

Duggar's conviction is affirmed.

Affirmed.

WYNNE and GRUBER, JJ., agree.