Cite as 2025 Ark. App. 459

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-24-807

| | | |
|---|---|---|
| DAMARION FORD | | **Opinion Delivered** October 1, 2025 |
| | APPELLANT | APPEAL FROM GARLAND COUNTY CIRCUIT COURT |
| V. | | [NO. 26CR-23-252] |
| | | |
| STATE OF ARKANSAS | | HONORABLE RALPH C. OHM, JUDGE |
| | APPELLEE | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellant, Damarion Ford, was tried by a jury in the Garland County Circuit Court and found guilty of one count of simultaneous possession of drugs and firearms, one count of felon in possession of a firearm, one count of possession of methamphetamine, and one count of possession of drug paraphernalia. Following a trifurcated jury trial, Ford was sentenced as a habitual offender to twenty-five years' imprisonment with a $10,000 fine. For his sole point on appeal, Ford contends the circuit court erred in denying his motions for directed verdict because the State failed to present substantial evidence that he actually or constructively possessed the firearm, methamphetamine, and paraphernalia. We affirm.

On March 13, 2023, Ford was pulled over by Hot Springs Police Department Patrol Officer Morgan Murray, and he was subsequently charged in the Garland County Circuit Court. Due to the nature of Ford's charges, the parties agreed to a trifurcated trial—a process

by which the State would present evidence of simultaneous possession of drugs and firearms, possession of less than two grams of methamphetamine, and possession of drug paraphernalia, then the jury would be instructed, deliberate, and return verdicts on those three counts. Next, the same process would take place for the charge of possession of a firearm by certain persons. After the jury returned a guilty verdict for that count, the jury would sentence Ford on all four counts at once.

On September 10, 2024, Ford's two-day jury trial began. The evidence presented at trial showed that on the day of Ford's arrest, he learned that his wife, Jennifer Jones, had filed for divorce. Jones testified that when Ford heard she had filed for divorce, Ford struck her with a gun he had purchased a week or two earlier while Jones was with him. Ford then left the couple's home in Jones's blue car. Jones, driving her daughter's white car, later located Ford at his daughter's house and waited outside for Ford to leave. Jones testified she began to follow Ford and called the police because he was driving erratically.

Officer Murray responded to the dispatch call. Dispatch alerted Officer Murray to a rolling disturbance involving a previous domestic battery and an individual armed with a firearm and provided him with a description of the vehicles Ford and Jones were driving. Officer Murray located the blue and white cars and pulled over Ford and Jones. When the blue car driven by Ford stopped, an unidentified passenger fled into the woods, and a small black bag fell out of the open passenger-side door. Officer Murray testified that Ford and Jones got out of their cars, and he issued commands for Jones to get back inside her car and for Ford to sit on the ground. Jones complied with this request, but Ford refused; instead,

2

he walked between the two cars and bent down beside the front bumper of the white car. Officer Murray testified this angle was outside the view of his patrol-car camera and his body camera, but the remaining footage was played for the jury.

Officers searched the black bag and found Ford's driver's license, his wallet, a 9mm handgun, a syringe containing a yellow substance, and a set of digital scales. Ford admitted the black bag was his but denied ownership of the firearm. Officers also found a plastic bag containing a white crystalline substance on the ground underneath the front bumper of the white car where Ford had bent down instead of complying with Officer Murray's commands to sit on the ground. Officer Murray testified that it appeared that someone had just dropped the bag on the ground because it had "no damage, no weathering, and no layer of dust." The white crystalline substance weighed 0.7997 grams and tested positive for methamphetamine.

The State rested its case after presenting the above evidence, and Ford moved for a directed verdict on the three charges before the jury at this stage. Ford argued that the State failed to prove he actually or constructively possessed the contraband. Ford added that the black bag containing the firearm and drug paraphernalia fell from the car when the passenger fled. While Ford admitted he was in close proximity to where the methamphetamine was found, he claimed Jones may have dropped the drugs on the ground when she walked from the white car to the blue car before getting back into the white car as ordered. The circuit court denied the motions, and the defense rested without presenting any evidence.

The jury was then instructed on the charges before them, and after deliberations, it returned three guilty verdicts on simultaneous possession of drugs and firearms, possession of less than two grams of methamphetamine, and possession of drug paraphernalia. The circuit court then presented the parties' stipulation to the jury that Ford is a convicted felon. Ford did not move for a directed verdict on the charge of possession of a firearm by certain persons. The court instructed the jury, the State briefly made a closing argument, and the jury deliberated. It then returned a verdict of guilty for possession of a firearm by certain persons. The jury sentenced Ford as a habitual offender to twenty-five years' imprisonment with a $10,000 fine.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Benton v. State*, 2020 Ark. App. 223, 599 S.W.3d 353. In reviewing a challenge to the sufficiency of the evidence, our standard of review is whether the jury's verdict is supported by substantial evidence; evidence, whether direct or circumstantial, is sufficient to support a conviction if it compels a conclusion and passes beyond speculation or conjecture. *Smith v. State*, 2022 Ark. App. 422, 654 S.W.3d 701. In making such a determination, we view the evidence in the light most favorable to the State, considering only the evidence that supports the guilty verdict. *Id.* Witness credibility is for the jury alone to determine; the jury may believe all or part of any witness's testimony and may resolve inconsistencies or conflicts in the evidence. *Wray v. State*, 2023 Ark. App. 465, 678 S.W.3d 431.

On appeal, Ford challenges the sufficiency of the evidence introduced against him. Specifically, he claims the State presented insufficient evidence to establish constructive

4

possession of the contraband. The State asserts that Ford's challenge to the sufficiency of the evidence concerning the felon-in-possession-of-a-firearm and possession-of-methamphetamine charges is precluded from appellate review because (1) Ford failed to move for a directed verdict on the felon-in-possession-of-a-firearm charge; and (2) Ford's argument at trial that the State's evidence was deficient to support the possession-of-methamphetamine charge differs from the argument he makes on appeal.

To preserve a sufficiency-of-the-evidence argument for appellate review, a defendant must move for directed verdict at the close of the State's evidence and at the close of all the evidence. Ark. R. Crim. P. 33.1(a). A motion for directed verdict shall state the specific grounds therefor. *Brown v. State*, 2015 Ark. App. 427, 468 S.W.3d 282. The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. Ark. R. Crim. P. 33.1(c). Because Ford failed to move for a directed verdict on the felon-in-possession-of-a-firearm charge, it will not be addressed on appeal. However, we hold that Ford's motion as to the charge of possession of methamphetamine is preserved for our review.

Here, it is undisputed that Ford was not in actual physical possession of the contraband at the time of the traffic stop. However, in drug cases, it is not necessary that the State prove literal physical possession of the contraband; possession of contraband can be proved by constructive possession, which is the control or right to control the contraband. *Hare v. State*, 2024 Ark. App. 223, 687 S.W.3d 158. Constructive possession may be

5

established by circumstantial evidence. *Id.* Constructive possession requires the State to prove beyond a reasonable doubt that (1) the accused exercised care, control, or management over the contraband, and (2) the accused knew the matter possessed was contraband. *Walker v. State*, 77 Ark. App. 122, 72 S.W.3d 517 (2002). Although constructive possession can be inferred when the drugs are in the joint control of the accused and another, joint occupancy of a vehicle, standing alone, is not sufficient to establish possession or joint possession. *Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000). There must be other factors linking the accused to the drugs:

> Other factors to be considered in cases involving automobiles occupied by more than one person are (1) whether the contraband is in plain view; (2) whether the contraband is found with the accused's personal effects; (3) whether it is found on the same side of the car seat as the accused was sitting or in near proximity to it; (4) whether the accused is the owner of the automobile, or exercises dominion or control over it; and (5) whether the accused acted suspiciously before or during the arrest.

*Mings v. State*, 318 Ark. 201, 207, 884 S.W.2d 596, 600 (1994) (citation omitted).

While the *Mings* factors offer guidance for our court in analyzing constructive-possession cases, the mere presence of some of these enumerated factors does not relieve our obligation to determine whether a nexus between the accused and the contraband has been established. The link between the accused and the drugs must be sufficient to raise a reasonable inference of knowledge of the contraband. *Walker*, 77 Ark. App. 122, 72 S.W.3d 517. In *Boston v. State*, 69 Ark. App. 155, 12 S.W.3d 245 (2000), we reversed a conviction where the contraband was found in a suitcase in the trunk of appellant's car where it could not be shown that he had knowledge of the contents of the suitcase. Similarly, in *Miller v.*

6

*State*, 68 Ark. App. 322, 6 S.W.3d 812 (1999), we affirmed a conviction where (although none of the five *Mings* factors were apparent) the strong odor of burning marijuana was sufficient to establish that the appellant had knowledge of the drug and concluded that it is the knowledge of the existence of the contraband that provides substantial evidence of constructive possession. *Id.*

The contraband underlying Ford's convictions are (1) a 9mm handgun found in a black bag outside the blue vehicle; (2) a syringe containing a yellow substances and a set of digital scales found in the same bag; and (3) a plastic bag of methamphetamine on the ground underneath the front bumper of the white car where Ford bent down instead of complying with Officer Murray's commands. As discussed previously, Ford was the driver of the vehicle. In *Thomas v. State*, 2024 Ark. App. 159, 686 S.W.3d 576, this court held that proof the defendant is the driver of the vehicle is evidence that he exercised dominion and control over the vehicle. *See also McCastle v. State*, 2012 Ark. App. 162, 392 S.W.3d 369. Perhaps more pertinent, Ford admitted he owned the black bag containing the 9mm handgun and drug paraphernalia, and the contraband was found alongside Ford's wallet and driver's license.

Furthermore, Officer Murray testified to initiating the traffic stop where he saw the black bag containing the contraband fall from the vehicle as the unidentified passenger fled. Ford, rather than complying with Officer Murray's command to sit on the ground, walked to the front bumper of the white vehicle and bent down. Officer Murray later located the plastic bag of methamphetamine underneath the front bumper of the white vehicle. This

7

court has found that a police officer's observation of an object thrown from a window and that police officer's discovery of contraband in the location where the object was thrown are sufficient to infer a defendant's constructive possession due to the defendant's proximity to the contraband. *See McNeely v. State*, 2017 Ark. App. 483, at 3–5, 530 S.W.3d 876, 878–79.

Like *McNeely*, *supra*, the present case involves an officer who saw the defendant discard an object in the vicinity where the contraband was found, which was held to be substantial evidence of constructive possession. Officer Murray witnessed Ford bend over in front of the front bumper of the white vehicle where the methamphetamine was discovered. Furthermore, Officer Murray stated that the appearance of the contraband was consistent with having just been placed on the ground. Officer Murray's testimony indicated it was highly likely Ford placed the methamphetamine in the area where it was located and that the methamphetamine was not in the area for a long period of time.

Although Ford argues that the State relied on, and the circuit court erred in considering, evidence that was not substantial enough to show Ford constructively possessed the contraband, we hold that Ford's constructive possession is supported by substantial circumstantial evidence. At the outset, this court has made clear that "there is no requirement that all or even a majority of the linking factors be present to constitute constructive possession." *McCastle*, 2012 Ark. App. 162, at 4–5, 392 S.W.3d at 372. Viewing the evidence in the light most favorable to the State, we conclude there was sufficient evidence from which a jury could find that Ford constructively possessed the contraband. We affirm.

8

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Ben Motal*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.